**Jackie MONROE, Appellant,**

v.

**GUARDSMARK, INC., Appellee.**

**No. 87–1633.**

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1988.

Decided July 13, 1988.

James E. Youngdahl, Little Rock, Ark., for appellant.

Jim Hunter Birch, Little Rock, Ark., for appellee.

Before FAGG and MAGILL, Circuit Judges, and WRIGHT, Senior Circuit Judge.*

MAGILL, Circuit Judge.

Jackie Monroe, a black male, brought this action pursuant to 42 U.S.C. § 1981

---

* THE HONORABLE EUGENE WRIGHT, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

and 42 U.S.C. § 2000e, *et seq.*, alleging that his discharge from employment as a security guard with Guardsmark, Inc. (Guardsmark) was racially motivated. The district court,[1] following a bench trial, dismissed Monroe's complaint with prejudice 659 F.Supp. 218. For reversal, Monroe contends, *inter alia*, that the district court's judgment is clearly erroneous because he met his burden of proving that Guardsmark's stated reason for termination was pretextual. We agree with the district court, however, that Monroe failed to meet his burden of proof, and we affirm.

## I. BACKGROUND

Monroe was hired as a security guard by Guardsmark on June 8, 1982. During his five-month tenure with Guardsmark, Monroe received a number of citations for violations of various company rules. The first disciplinary incident occurred around June 25, 1982, when Monroe was disciplined for leaving his post fifty minutes early. On July 19, 1982 and on August 2, 1982, Monroe was cited for making personal telephone calls on company time, in violation of Guardsmark's policy. On August 6, 1982, Monroe was found sleeping on duty. While company policy provided for termination of employment based on such an offense, Monroe merely received a warning that he would be suspended for any future violation of company rules.

On September 29, 1982, Monroe got into an altercation with his direct supervisor, Terrence Humphrey, over the locking of a wooden yard gate. Monroe alleged that Humphrey attempted to punch him, and that Humphrey called him racially derogatory names. Humphrey denied the allegations, and alleged that Monroe grabbed and shoved him after he confronted Monroe over the unlocked gate. Unable to confirm the credibility of either version, Jim Bush, Guardsmark Unit Manager, suspended both men for one week.

Finally, on October 24, 1982, Monroe was cited for receiving visitors at his guard post, after having lunch brought to him by a fellow off-duty guard.[2] Monroe claims that other white guards regularly violated the Lunch Rule. Monroe, however, did not present any evidence to establish that white guards caught violating the Lunch Rule were not disciplined.

On October 26, 1982, Monroe was discharged by Guardsmark. The discharge report, which was completed contemporaneously with Monroe's discharge, clearly states that Monroe was discharged because of the September 29, 1982 altercation and the subsequent October 24, 1982 Lunch Rule violation.

In December 1982, Monroe filed a charge of racial discrimination against Guardsmark with the Equal Employment Opportunity Commission (EEOC). In September 1984, the EEOC issued a determination letter in which it found reasonable cause to believe that Monroe's assertions were true. A "right to sue" letter was later issued after conciliation failed.

Following a bench trial in the district court, Monroe's complaint was dismissed with prejudice. The district court held that Monroe failed to establish that Guardsmark's proffered non-discriminatory reason for the discharge was pretextual. This appeal followed.

## II. DISCUSSION

The order and allocation of proof in a Title VII disparate treatment case is governed by the tripartite standards set forth in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory rea-

---

**1.** The Honorable Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas.

**2.** Guardsmark security guards were prohibited from receiving visitors at their posts, and from having lunch brought to them while on duty. We shall refer to this rule as the "Lunch Rule."

son for the employee's [discharge]." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.* at 252–53, 101 S.Ct. at 1093. (citations omitted).

In order to satisfy the first prong of this test, the plaintiff is required to establish the following elements: (1) he belongs to a protected group; (2) he was qualified for the position he was holding; (3) he was discharged; and (4) other employees with similar qualifications were not discharged. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). We agree with the district court that Monroe proved a prima facie case of racial discrimination.

The district court, after properly shifting the burden to the defendant, found that Guardsmark met its burden by presenting sufficient evidence that Monroe was discharged for a legitimate nondiscriminatory reason, *i.e.,* Monroe's failure to abide by company regulations.

Monroe then had an opportunity to show that Guardsmark's articulated reasons for the discharge were in fact a pretext. The district court concluded that Monroe failed to meet his burden, a finding that may be reversed on appeal only if it is determined to be clearly erroneous.

We now review Monroe's assertions of pretext. We note that "[e]specially relevant [to a showing of pretext] would be evidence that white employees involved in acts * * * of comparable seriousness * * * were nevertheless retained or rehired." *Green,* 411 U.S. at 804, 93 S.Ct. at 1825. An employer may justifiably discharge one who has engaged in unlawful, disruptive, or improper acts against it, but only if the criteria for employee discharge are applied consistently to members of all races. *See id.*

Here, Monroe alleges that Guardsmark retained white employees who had violated the Lunch Rule, while firing him for violating the same rule. The record, however, belies this assertion. There is no evidence in the record that other white security guards with a disciplinary record similar to Monroe's were retained after being observed violating the Lunch Rule.

We believe the district court's conclusion as to Monroe's failure of proof on the issue of pretext to be amply supported by the record, and in no event clearly erroneous.

Monroe also raises three allegations of evidentiary error. He contends that the district court erred in excluding (1) alleged admissions of a Guardsmark employee; (2) a statement he asserts qualifies for admission under the excited utterance exception to the hearsay rule, *see* Fed.R.Evid. 803(2); and (3) the EEOC determination letter. We have reviewed these allegations and find them to be without merit.

Accordingly, the judgment of the district court, dismissing Monroe's complaint with prejudice, is affirmed.